IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BARBARA A. NEZELEK,

                              Plaintiff,

        vs.                                         Civil Action No.
                                                    3:05-CV-1481 (FJS/DEP)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                              Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF

HINMAN, HOWARD LAW FIRM          EUGENE D. FAUGHNAN, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

FOR DEFENDANT

HON. GLENN T. SUDDABY            WILLIAM H. PEASE, ESQ.
United States Attorney for the   Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]     Plaintiff's complaint, which was filed on November 29, 2005, named Jo
Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBRA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                      SOM RAMRUP, ESQ.
                                        Assistant Regional Counsel

DAVID E. PEEBLES
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Barbara A. Nezelek, who suffers from various medical conditions including, principally, osteoarthritis of the knees requiring a total replacement of the right knee, which has already been performed, and an anticipated future replacement of the left, has commenced this proceeding seeking judicial review of an administrative determination by the Commissioner finding that she was not disabled, within the meaning of the Social Security Act (the "Act"), at any relevant time, and thus denying her application for disability insurance benefits.  In her challenge to the Commissioner's determination plaintiff asserts that the conclusions of the administrative law judge ("ALJ") assigned to hear and determine the matter, to the effect that despite her limitations she is capable of meeting the exertional requirements of her past relevant work – a finding which is pivotal to the ALJ's finding of no disability – is not supported by substantial evidence.  Arguing that she is unable to perform even the modest

exertional requirements of sedentary work, plaintiff seeks a remand of the matter to the agency with a directed finding of disability, for the limited purpose of calculating disability insurance benefits owed to her.

Having carefully reviewed the evidence in the record, considered in the light of plaintiff's arguments, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that defendant's motion for judgment on the pleadings dismissing plaintiff's challenge to the Commissioner's determination be granted.

I.    BACKGROUND

The plaintiff was born in 1960; at the time of the administrative hearing, held on June 2, 2005, she was forty-five years of age.[2] Administrative Transcript at pp. 25, 54.  Plaintiff is married and lives with her husband and three children, ages ten, eight and four, in a two-story dwelling located in Johnson City, New York.  AT 25-26, 29.  Plaintiff stands five feet and three inches in height, and weighs one hundred-ninety pounds.  AT 26; *see also* AT 79.  Plaintiff can read and speak English, and is able to drive.   AT 26-27.

---

[2]      Portions of the administrative transcript filed by the Commissioner in the action, Dkt. No. 4, and comprised of proceedings and evidence before the agency, will be cited herein as "AT ___."

Plaintiff is a high school and college graduate.  AT 27.  While plaintiff was originally certificated as a licensed practical nurse ("LPN"), having worked in that profession for a period of approximately five years, she transferred into the field of human services at the suggestion of one of her physicians, in light of her knee conditions, and continued her education, ultimately achieving a Bachelor of Science college degree in that discipline.[3]  AT 27, 35-36.

Plaintiff last worked in or about August of 2003, having stopped working after being scheduled for knee replacement surgery.  AT 80; *see also* AT 36.  Prior to that time plaintiff worked in a nursing home environment, initially as a licensed practical nurse, and later as a social worker/admissions coordinator/case manager.  AT 27, 36, 76, 80.  While plaintiff's employment was initially full time, after she began having children she scaled back to working only on a part-time basis.  AT 27, 36.

Over time, plaintiff's knee conditions have been treated by both her family physician, Dr. James Dellavalle, and an orthopedic specialist.  AT 102-120, 160-78, 282-85, 261-69.  While Dr. Lance Peters, of Orthopedic Associates, located in Binghamton, New York, initially served as plaintiff's orthopedic specialist, responsibility for her case was transitioned to Dr.

---

[3]        According to the plaintiff, her LPN license has long since lapsed.  AT 27.

Robert Capecci after Dr. Peters left the area.  AT 28, 102-120, 160-78, 282-85.  Plaintiff has had approximately nine separate surgeries on her knees, including a full right knee replacement performed by Dr. Peters on September 29, 2003.  AT 104-120.  While a left knee replacement has been recommended for the plaintiff, she has opted to postpone that surgery as long as possible in light of her age and the prognostication that such a replacement will only last between ten and fifteen years.  AT 28-29.

Plaintiff claims that she is unable to work even in her past position in light of the pain which she experiences in both knees, and the requirement that in that job she be able to walk and get in and out of chairs.  AT 27.  Plaintiff describes her pain as constantly present with "occasional" radiation into her right hip, and quantifies the pain, with use of medication, as between four and five on a scale ranging up to ten in severity.  AT 31-32.  Plaintiff has used a variety of medications in order to alleviate her pain including Mobic, a nonsteroidal anti-inflammatory drug, Tylenol with Codeine, and Extra Strength Tylenol and, when absolutely necessary, Vioxx or Hydrocodone.  AT 32, 84, 98, 227.

As for daily activities, plaintiff testifies that she drives between fifty and one hundred miles per week.  AT 26.  According to the plaintiff, a typical day for her consists of caring for her children, performing some

housework, and preparing dinner.  AT 29.  The plaintiff states that she is able to care for her personal needs, and performs all of the shopping and food preparation for the household.  AT 29, 87-94.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before The Agency

Plaintiff filed an application with the agency for disability insurance benefits on April 23, 2004.  AT 54-56.  Following the denial of that claim on January 26, 2004, AT 41-44, a hearing was conducted by video conferencing on June 2, 2005 before ALJ William F. Curtin.  *See* AT21-38. Following the conclusion of that hearing, and at which plaintiff was represented by counsel, ALJ Curtin issued a decision dated June 29, 2005, upholding the denial of benefits.  AT 11A-16.

In his decision, ALJ Curtin conducted a *de novo* review of the available evidence and applied the now-familiar, five step sequential test for determining disability.  After first determining that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 15, 2003, AT 12, ALJ Curtin next determined that plaintiff's osteoarthritis of the knees presents sufficient limitations on her ability to perform basic work functions to quality as severe at step two of the analysis, but determined that the condition did not meet or equal any of

the listed, presumptively disabling conditions set forth in the governing

regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[4]  AT 12.  In making his

step two analysis ALJ Curtin considered the effects of plaintiff's diagnosed

mental conditions, including adjustment disorder with depressed mood

and anxiety related disorders, as well as of her diagnosed mild

hypertension, but concluded that "they do not interfere even minimally,

with her ability to work."  AT 12.

Before proceeding to the next step of the sequential analysis, the

ALJ canvassed the available medical record in order to determine

plaintiff's residual functional capacity ("RFC").  Placing heavy reliance

upon an assessment form completed on May 19, 2005 by plaintiff's

treating orthopedist – an assessment with which plaintiff openly agreed

during the hearing – the ALJ concluded that plaintiff is capable of

performing the exertional requirements of sedentary work.  AT 13-15.  In

arriving at his RFC determination, ALJ Curtin rejected plaintiff's subjective

complaints of disabling pain as not fully credible, based upon the extent of

---

[4]    Plaintiff does not find fault with the ALJ's determination that her condition
does not meet or equal any of the listed, presumptively disabling impairments.  *See*
Plaintiff's Memorandum (Dkt. No. 5) at 12.

her driving and other daily activities.[5]  AT 14.

Turning to step four, ALJ Curtin concluded that while plaintiff's RFC precludes her from working as a licensed practical nurse, she is able to meet the exertional demands of her past relevant work as a social worker/admissions coordinator/case manager, and thus concluded that plaintiff was not disabled, finding it unnecessary to proceed to step five of the disability algorithm, at which the burden of proof shifts to the Commissioner.  AT 15.

The ALJ's opinion became a final determination of the agency on September 30, 2005, when the Social Security Administration Appeals Council denied her request for review of that decision.  AT 5-7.

B.    This Action

Plaintiff commenced this action on November 29, 2005.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's March 10, 2006 filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 3, 4.  With the filing of plaintiff's brief on April 24, 2006, Dkt. No. 5, and that on behalf of the Commissioner on June 1, 2006, Dkt. No. 6, the matter is now ripe for

_____

[5]      In her brief, plaintiff does not challenge the ALJ's rejection of her subjective pain complaints as not fully credible.

determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

     A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, his decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If,

---

[6]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing

-10-

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

-12-

the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

> C.    The Evidence In This Case

In support of her challenge to the Commissioner's determination,

plaintiff argues that 1) the ALJ improperly relied upon opinions of an

agency consultant, Dr. Frank Colarusso, rather than crediting those of her

treating physician, Dr. Robert Capecci, when making his RFC finding; 2)

the ALJ's RFC determination is flawed, in that it failed to take into account

the effects of certain nonexertional limitations; and 3) the ALJ's step four

finding, to the effect that plaintiff is capable of performing her past relevant

work, is not supported since her last position entailed exertional demands

which exceed her sedentary work capacity, as determined by the ALJ.

> 1.    Treating Physician

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

---

[7]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

In this instance critical opinions from plaintiff's treating sources were not in fact rejected by the ALJ; indeed, ALJ Curtin's RFC finding was based principally upon opinions rendered by Dr. Capecci, plaintiff's treating orthopedic specialist, in his May 19, 2005 medical assessment, according that report "significant weight."  AT 13; *see* AT 306-09. Plaintiff attempts to manufacture a treating physician argument by asserting that while the ALJ purported to rely upon Dr. Capecci's opinions, in reality he based his RFC finding upon a report from an agency consultant, Dr. Frank Calarusso.  *See* Plaintiff's Brief (Dkt. No. 5) at 9-11. A careful review of the ALJ's RFC findings and a comparison of those findings to the assessment of Dr. Capecci, however, firmly establishes that Dr. Capecci's opinions, with which plaintiff agreed during her hearing testimony, formed the basis for the ALJ's RFC findings.  In short, the Commissioner properly evaluated the opinions of plaintiff's treating

-16-

physician and did not commit error in accepting those opinions as a basis for his RFC determination.

2.    The ALJ's RFC Finding

The lynchpin of the ALJ's finding of no disability is his determination regarding plaintiff's RFC.  Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence in the record.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is

-17-

capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Recalling that it is the claimant who bears the burden of proof through step four of the sequential analysis, I am unable to find any proof in the record to undermine the ALJ's RFC finding. While plaintiff hypothesizes that the medications which she takes "could" have an effect on such matters as persistence and concentration, there is no substantiation in the record for such repercussions, and certainly to the extent argued. Similarly, while plainly plaintiff suffers from some residual effects of her hysterectomy and frequent diarrhea, the record, including her hearing testimony, fails to disclose any significant impact of those conditions upon her ability to perform work-related functions.

The ALJ's RFC finding is fully supported by the opinions of plaintiff's treating physicians in the record, including opinions from her treating

orthopedist, Dr. Capecci.  In his assessment Dr. Capecci notes that

plaintiff has the ability to lift and carry ten pounds occasionally and five

pounds frequently.  AT 306.  According to Dr. Capecci, plaintiff is able to

stand and walk for two hours, and sit for six, in an eight hour work day.  AT

307.  These findings correspond to the exertional demands associated

with sedentary work.[8],[9]  *See* 20 C.F.R. § 404.1567(a).

It is true that Dr. Capecci goes on to state that plaintiff is unable to

climb, balance, stoop, crouch, kneel, or crawl, nor is she able to work

around heights or moving machinery.  *See* AT 307.  These limitations,

---

[8]     While it is true that Dr. Capecci limits the plaintiff to sitting for only one half hour at a time, as the Second Circuit has observed, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

[9]     Sedentary work is defined by regulation as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

however, do not come into play with respect to plaintiff's past relevant work as a social worker/admissions coordinator/case manager, *see* U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT"), Section 195.107-030 (4th ed. rev. 1991), nor are these postural and environmental activities normally associated with or required when performing sedentary work. *See* Social Security Ruling ("SSR") 96-9p.

Having carefully reviewed the record, I find that the ALJ's RFC finding is supported by substantial evidence in the record including the opinions of Dr. Capecci, plaintiff's treating orthopedist, as well as those of consultative examiner Dr. Calarusso.

### 3.      The ALJ's Past Relevant Work Finding

Having determined that plaintiff is able to meet the exertional demands of sedentary work, the ALJ concluded that she is able to perform her past relevant work.  Plaintiff challenges this determination.

The past relevant work inquiry focuses upon whether a claimant is able to perform the functional demands and duties of a job previously held, either as actually performed or as generally required by employers throughout the national economy.  *See* 20 C.F.R. § 404.1520(e); SSR 82-61.  There is a not a great deal of information contained in the record addressing plaintiff's actual duties and responsibilities in her past relevant

-20-

works, aside from those associated with her earlier role as an LPN.  The

position of social worker is, however, well-described in the DOT, which

outlines the principal duties associated with the position and affixes a

physical demand coefficient of sedentary.  *See* DOT Section 195.107-030.

While plaintiff's brief implies the existence of mental limitations which

should have been factored into the determination of whether she is able to

perform her past relevant work, the ALJ found the record lacking in any

assertion as to what those mental impairments are and how they impact

upon her ability to perform her past relevant work.[10]  *See* Plaintiff's Brief

(Dkt. No. 5) at 15.  Plaintiff's claim in this regard, moreover, is flatly

contradicted by a report from plaintiff's treating psychiatrist, Dr. Jill Krilov,

in which she notes that plaintiff does not have a mental disability and is

able to deal with work stresses, maintain a pension, and concentration,

and understand, and remember and carry out both complex and simple

job instructions, and that the limitations on plaintiff's ability to perform work

arise from her physical disorder and not a mental impairment.  AT 257-59.

The finding is further supported by a psychiatric evaluation performed by

Dr. Mary Anne Moore on June 16, 2004.  AT 221-25.  Additionally, it

---

[10]      As was stated earlier, the ALJ also determined that plaintiff's mental
condition was not sufficiently severe to qualify at step two of the sequential analysis,
AT 12, and that finding is based on ample support from the record.

should be noted that while plaintiff implies the existence of limitations, she does not expressly state what those limitations are and how they would affect her ability to perform the functions of her past relevant work.

In sum, the ALJ properly applied his RFC finding and determined that plaintiff retains the capacity to perform the requirements of her past relevant work.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

While plaintiff plainly experiences residual effects, including pain which to some degree is controlled through the use of medication, as a result of her knee conditions, the evidence in the record convincingly establishes her ability to perform the exertional requirements of sedentary work, without additional nonexertional limitations of significance.  And, since plaintiff's past relevant work entails only sedentary exertional requirements, the ALJ's determination at step four of the sequential analysis that plaintiff is able to perform these exertional requirements of her past relevant work is supported by substantial evidence.  Based upon the foregoing, it is therefore hereby

RECOMMENDED that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties in accordance with this Court's local rules.


Dated:      February 14, 2008
            Syracuse, NY



David E. Peebles
U.S. Magistrate Judge